Ambac Assur. Corp. v Countrywide Home Loans Inc. (2019 NY Slip Op 06570)





Ambac Assur. Corp. v Countrywide Home Loans Inc.


2019 NY Slip Op 06570


Decided on September 17, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 17, 2019

Sweeny, J.P., Richter, Oing, Singh, JJ.


9461N 651612/10

[*1] Ambac Assurance Corporation, et al., Plaintiffs-Respondents,
v
Countrywide Home Loans Inc., et al. Defendants-Appellants.


Williams & Connolly LLP, Washington, DC (Craig D. Singer of the bar of the District of Columbia, admitted pro hac vice, of counsel), and Simpson Thacher & Bartlett LLP, New York (Joseph M. McLaughlin of counsel), for Countrywide Home Loans Inc., Country Wide Securities Corp., and Country Wide Financial Corp., appellants.
O'Melveny & Myers, LLP, New York (Jonathan Rosenberg of counsel), for Bank of America, appellant.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (Kathleen M. Sullivan of counsel), for respondents.



Order, Supreme Court, New York County (Eileen Bransten, J.), entered January 2, 2019, which denied defendants' various pretrial motions, unanimously modified, on the law, to grant the motions by Bank of America Corp. (BAC) to sever the claims asserted against it and to strike the jury demand on those claims, and otherwise affirmed, without costs.
The court correctly denied the Countrywide defendants' motion seeking dismissal of the fraudulent inducement claim.
As relevant here, Ambac, the monoline insurer, asserts causes of action against the Countrywide defendants for: (a) breaching various representations and warranties about their loan-origination practices and the quality of the loans in the securitizations; and (b) fraudulently inducing Ambac to insure the securitizations by making precontractual misrepresentations and omissions. In a prior decision in this case (31 NY3d 569 [2018]), the Court of Appeals concluded that damages for Ambac's contract claims were to be measured by the repurchase protocol contained in the parties' agreements (id. at 583-584). As for the fraudulent inducement claim, the Court found that the repurchase protocol was not applicable, and that damages should instead be measured "by reference to claims payments made based on nonconforming loans" (id. at 581). Thus, as the motion court properly found, the Court of Appeals recognized distinct measures of damages for the fraudulent inducement claim arising separately from the contract claims.[FN1]
While a fraudulent inducement claim can be dismissed as duplicative of a breach of contract claim if it seeks the "same damages" (Mosaic Caribe, Ltd. v AllSettled Group, Inc., 117 AD3d 421, 422-423 [1st Dept 2014]), the Countrywide defendants here have not established, as a matter of law, that the damages sought in connection with the fraud claim are the same as those [*2]sought in connection with the contract claims. Ambac has submitted an affidavit from its expert, unchallenged by the Countrywide defendants, which explains that the damages for the fraud and contract claims are "qualitatively and quantitatively distinct." The expert explains that whereas the contract damages are calculated based on the terms of the contractual repurchase protocol, the fraud damages are determined based on the portion of Ambac's claims payments that flow from nonconforming loans. Thus, according to the expert, the calculation of the fraud damages does not rely in any way on the contractual repurchase price that governs the contract damages calculation.
The expert further explains that the fraud damages differ from the contract damages because they include additional expenses incurred by Ambac that are not recoverable in contract.
In his affidavit, the expert states that he is including the revised damages calculations in a forthcoming supplemental expert report. A motion is currently pending in Supreme Court for leave to serve the new report, which presumably would contain a more detailed explanation of the differences between the contract and fraud damages. In view of the expert affidavit already submitted, and the motion practice in Supreme Court, it is premature to dismiss the fraud claim as duplicative. Thus, denial of the motion to dismiss the fraud claim, without prejudice to renewal after the conclusion of the proceedings below related to the expert affidavit is appropriate.
MBIA Ins. Corp. v Credit Suisse Sec. [USA] LLC (165 AD3d 108 [1st Dept 2018]) and Financial Guar. Ins. Co. v Morgan Stanley ABS Capital I Inc. (164 AD3d 1126 [1st Dept 2018]) do not require a different result. In MBIA, the court concluded that fraud damages in the form of all claims payments made were not recoverable, and that "repurchase damages" were duplicative of contract damages (165 AD3d at 113-114). Here, Ambac does not seek to recover all claims payments made, nor does it seek repurchase damages under its fraud claim. Instead, it only seeks fraud damages based on claims payments flowing from nonconforming loans, the precise measure sanctioned by the Court of Appeals (see Ambac, 31 NY3d at 581 [Ambac's fraud damages should be measured by reference to claims payments based on nonconforming loans]). In Financial Guar., the court merely found, on the specific facts alleged, that the fraud damages duplicated the contract damages (164 AD3d 1126). There was no indication that the plaintiff in that case submitted an expert affidavit explaining any differences between the measures of damages sought by the fraud and contract claims.
Put simply, neither MBIA nor Financial Guar. stands for the sweeping proposition that, in all residential mortgage-backed security cases, a fraudulent inducement claim brought by a monoline insurer is, as a matter of law, duplicative of contract claims based on the same nonconforming loans.
The court correctly denied Countrywide's motion to determine the population of loans at issue in the breach of contract claim. Regardless of whether there are nonconforming loans to which the repurchase protocol may not be applied because of Ambac's failure to satisfy the notice requirements for application of the protocol, the protocol is also triggered with respect to any loans for which it can be shown that Countrywide, as originator, sponsor, and servicer of the loans, knew or should have known of the breaches. Thus, triable issues of fact exist in this regard.
The court correctly denied the motion to preclude Ambac from using statistical sampling to prove its breach of contract claims in terms of both liability and damages. While the motion was not procedurally barred, we find that despite the language of the repurchase protocol, RMBS plaintiffs like Ambac are entitled to introduce sampling-related evidence to prove liability and damages in connection with repurchase claims (see Deutsche Bank Natl. Trust Co. for Morgan Stanley Structured Trust I 2007-1 v Morgan Stanley Mtge. Capital Holdings LLC , 289 F Supp 3d 484, 493, 496 [SD NY 2018]); Assured Guaranty Municipal Corp. v Flagstar Bank, FSB , 920 F Supp 2d 475, 512 [SD NY 2013]; see also Federal Hous. Fin. Agency for Fed. Natl. Mtge. Assn. v Nomura Holding Am., Inc., 873 F3d 85 [2d Cir 2017], cert denied -US-, 138 S Ct 2679 [2018][upholding a $806 million RMBS judgment following a bench trial in which statistical sampling featured prominently]).
Under the circumstances here, the court erred in failing to grant defendant BAC's motion to sever the claims asserted against Countrywide from the contingent secondary-liability claims asserted against BAC. Severance of the contingent claims against BAC should have been granted given that the claims could become moot after the first trial of the primary-liability claims (see e.g. Wallace v Crisman, 173 AD2d 322 [1st Dept 1991]). Despite some possible overlap in issues and evidence, the primary issue of whether Countrywide breached or fraudulently induced Ambac to enter the agreements between 2004 and 2006 is sufficiently separate from the key issue in the claim against BAC, which concerns whether Countrywide de facto merged with BAC or became BAC's alter ego through a series of different transactions and conduct in 2008 and later, such that a grant of severance would further convenience by expediting the primary proceedings and avoid the risk of prejudicial spillover.
Finally, the court erred in failing to grant BAC's motion to strike Ambac's jury demand for its secondary-liability claim against BAC. Ambac is not entitled to a jury trial on its claims against BAC because the jury demand, regardless of whether or not it is disallowed by the contractual jury waiver, seeks more than "a judgment for a sum of money only" under CPLR 4101(1). It also seeks a declaration that BAC is Countrywide's successor by virtue of a de facto merger, which would render BAC jointly liable for any unpaid "judgment for a sum of money" against Countrywide. This is an equitable remedy, which must be decided by a court.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 17, 2019
CLERK



Footnotes

Footnote 1: Indeed, at oral argument before the Court of Appeals, counsel for the Countrywide defendants recognized that there was a different measure of damages for the fraud and contract claims. In response to questioning by Judge Garcia, counsel explained that the appropriate measure of damages for the fraud claim was "out-of-pocket loss," and stated that Ambac's expert would have the opportunity to "calculate what the [fraud] damages are."